IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHERYL LEE-OWENS,<br><br>    Plaintiff,<br><br> v.<br><br>SCHOOL DISTRICT OF PHILADELPHIA,<br><br>    Defendant. | CIVIL ACTION<br>NO. 16-4648 |

**OPINION**

**Slomsky, J.**                                         June 7, 2018

## I. INTRODUCTION

Plaintiff Cheryl Lee-Owens brings this suit against her former employer, Defendant School District of Philadelphia ("Defendant" or "School District"). She alleges that Defendant failed to make a reasonable accommodation for her disability while she was employed at Wagner Middle School, which is part of the School District. (Doc. No. 34.) In addition, she argues that Defendant retaliated against her when she complained about the failure to provide her with a reasonable accommodation. (Id.)

In Count I of her First Amended Complaint ("FAC"), Plaintiff alleges a violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C § 12112(a) et seq. (Id. ¶¶ 77-87.)[1] This is the failure to make a reasonable accommodation charge. In Count III, she asserts a violation of 42 U.S.C. § 12203(a) of the ADA, which prohibits retaliation for making an

---

[1] In a letter dated April 19, 2018, Plaintiff's counsel notified the Court that Count II of the FAC (Doc. No. 34) is withdrawn. (Doc. No. 68.)

accommodation request under the Act.[2] Defendant moves for summary judgment. (Doc. No. 45.) The Motion is now ripe for a decision. For reasons that follow, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment (Doc. No. 45).[3]

## II. BACKGROUND

Plaintiff is a former Educational Inclusion Specialist[4] at Wagner Middle School in Philadelphia, Pennsylvania and was employed by the School District of Philadelphia. (Doc. No. 34 ¶ 18.) Because of her role as a Specialist, Plaintiff would travel from classroom to classroom to follow special education students to their various classes and would bring her materials along. (Pl.'s Dep., Nov. 9, 2017, 11:16-21.) She was responsible for approximately twenty to thirty students. (Id. at 12:1-6.) To perform her work assignment, Plaintiff had to physically exert herself by having to "stand, kneel, crouch, stoop and bend over students to provide individual instruction" while also having to "carry heavy books, computers, printers and other equipment." (Id. ¶ 19.) Frequently, Plaintiff would have to physically lift or move students in order to break up fights or to engage in related activity depending on the circumstances if a "student wasn't compliant or if a student was ill or otherwise incapacitated." (Doc. No. 50-3 at 10:3-11:5; 14:24-15:7.)

---

[2] In a prior letter dated December 18, 2017, Plaintiff's counsel notified the Court that Counts IV, V, and VI of the FAC (Doc. No. 34) are withdrawn. (Doc. No. 52.)

[3] In making a decision on the Motion, the Court has considered the following: Defendant's Motion for Summary Judgment, Defendant's Statement of Undisputed Material Facts, and Exhibits (Doc. No. 44); Plaintiff's Memorandum of Law and Statement of Undisputed Material Facts in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Exhibits (Doc. No. 50); Defendant's Reply to Plaintiff's Opposition (Doc No. 57); and Plaintiff's Sur-Reply to Defendant's Reply to Plaintiff's Memorandum (Doc. No. 69).

[4] An Educational Inclusion Specialist is someone who "assist[s] with the learning and education with [students with and without disabilities] and the teachers." (Pl.'s Dep., Nov. 9, 2017, 8:7-16.)

On August 30, 2013, before the start of the 2013-2014 school year, Plaintiff submitted a request for accommodation to Andrew Rosen, the then Deputy of Employee Relations of the School District. (Pl.'s Dep., Nov. 9, 2017, 17:20-18:9; Doc. No. 44-1 ¶ 12.) Suffering from lumbar disc degeneration and lumbar spinal stenosis, Plaintiff requested a classroom assignment on the first floor or a classroom at another school with an elevator. (Pl.'s Dep., Nov. 9, 2017, 18: 5-9; Doc. No. 34 at ¶¶ 23, 35.) She supplemented her request with a letter from her two treating doctors, which stated: "[T]here should be no stair climbing due to [Plaintiff's] lumbar disc degeneration and lumbar spinal stenosis." (Doc. No. 34 ¶ 35.) She also informed Maya Johnstone, her immediate supervisor and the Wagner Middle School principal, about her physical challenges if assigned to a higher floor. (Id. ¶ 29.) Nevertheless, Johnstone assigned Plaintiff to work in a classroom on the third floor of the Wagner Middle School, which did not have an elevator. (Id. ¶ 35.)

As a result of her accommodation request, Plaintiff was scheduled by Carol Kenney, the Director of Employee Health Services, to meet on September 4, 2013 with Dr. Aribelle Jones, M.D., of the School District's Health Services Department. (Pl.'s Dep., Nov. 9, 2017, 22:18-23:16; Doc. No. 50-7 at 3.) During her examination, Plaintiff told Dr. Jones that she was "unable to ascend and descend the stairs several times a day." (Doc. No. 50-8 at 1.) Dr. Jones instructed Plaintiff to return to work and resume stair climbing, despite her treating doctors' recommending the opposite. (Pl.'s Dep., Nov. 9, 2017, 24:2-7.) Dr. Jones told her that she would hear back from the School District with a decision on her accommodation request within five days. (Id. at 24:8-11.) Plaintiff did not receive any update on her request within the ensuing five days.

On September 23, 2013, she took sick leave "due to the aggravation of her condition from climbing stairs daily for three weeks while waiting for a reasonable accommodation of a

classroom assignment on a lower floor." (Doc. No. 34 ¶ 43; Pl.'s Dep., Nov. 9, 2017, 28:14-21.) Before going on leave, Plaintiff tried to find out whether the School District had rendered a decision on her request by asking Johnstone and Rosen, but to no avail. (Pl.'s Dep., Nov. 9, 2017, 25:16-26:6.)

On September 25, 2013,[5] nearly three weeks after the examination, Dr. Jones sent a memorandum to Rosen, stating that Plaintiff was requesting an accommodation of "limited stair climbing" and qualified for that accommodation. (Doc. No. 50-8 at 1.) In her memorandum, Dr. Jones noted that Plaintiff did not require a cane, which "solidif[ied Plaintiff's] declaration that she was work able." (Id.) On September 27, 2013, while still on leave and waiting for the School District to make a decision on her request, Plaintiff submitted a notice of retirement, effective October 7, 2013. (Id.) She claims that "[b]ut for Defendant's intentional denial of a reasonable accommodation, Plaintiff would have worked until age 65 before taking her retirement." (Id. ¶ 66.)

On October 14, 2013, Plaintiff sent Rosen a request for status of her personal leave payout which she believed was owed to her. (Doc. No. 34 ¶ 68.) Rosen never responded. (Id.) On or about June 9, 2014, Plaintiff contacted Lincoln Investment, "because that was the entity that held onto [Plaintiff's] 401[K] and that was [her] separation pay." (Pl.'s Dep., Nov. 9, 2017, 30:23-31:1.) A Lincoln Investment representative informed Plaintiff that the School District had updated her status to "terminated," rendering her ineligible to receive the payout.[6] (Doc. No. 34

---

[5] The FAC states that Rosen "denied the request for the accommodation on September 3, 2013." (Doc. No. 34 at ¶ 29.) However, during her November 9, 2017 deposition, she states that she never received a final determination of her request. (Pl.'s Dep., Nov. 9, 2017, at 25: 16-24.)

[6] Plaintiff does not describe in detail what she means by "personal leave payout." It appears she is referring to the money she may be owed for accumulating vacation and sick days. Ultimately, she did receive this "payout."

¶ 70.)

On August 26, 2016, Plaintiff filed a Complaint against the School District of Philadelphia. (Doc. No. 1.) On October 24, 2017, she filed the FAC. (Doc. No. 34.) On February 23, 2018, the School District of Philadelphia filed a Motion for Summary Judgment. (Doc. No. 44.) On April 2, 2018, Plaintiff filed her Opposition to the Motion for Summary Judgment (Doc. No. 50) and on April 11, 2018, the School District filed its Reply. (Doc. No. 57.)

### III.     STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 271 (3d Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the non-moving party. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. Doe v. Luzerne County, 660 F.3d 169, 175 (3d Cir. 2011) (citing Gray v. York Papers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247-49.

In deciding a motion for summary judgment, the Court must view the evidence and all reasonable inferences from the evidence in the light most favorable to the non-moving party. Macfarlan, 675 F.3d at 271; Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. Anderson, 477 U.S. at 255. If there is no factual issue and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

## IV. ANALYSIS

In Count I, Plaintiff asserts a violation of the Americans with Disabilities Act (ADA), which prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). Also in Count I, Plaintiff raises a claim under 42 U.S.C. § 12112(b)(5)(A), which prohibits employers from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee." [7] § 12112(b)(5)(A). Finally, in Count III, Plaintiff alleges that the School District engaged in retaliation by changing her status to "terminated" with the Lincoln Investment Company after she requested an accommodation.

---

[7] An exception to this is if an employer covered by the ADA "can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." § 12112(b)(5)(A).

The School District moves for summary judgment on all three counts based on the following three arguments. First, under Count I, Plaintiff is not a qualified individual who can make a claim under the ADA. Second, also under Count I, Plaintiff did not suffer any adverse employment action because she was not denied an accommodation. Third, regarding the claim in Count III, Plaintiff fails to set forth a prima facie case to establish retaliation.[8] The Court will address each of these arguments in turn.

**A. A Genuine Issue of Material Fact Exists as to Whether Plaintiff Is a Qualified Individual Under the ADA**

The parties dispute whether Plaintiff is a qualified individual with a disability under the ADA because they disagree on if she is able perform the essential functions of her job, with or without reasonable accommodation. This is an element of an ADA violation.

The ADA prohibits employers from discriminating "against a qualified individual with a disability." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 205 (3d Cir. 1999) (quoting 42 U.S.C. § 12111(8)). To determine whether a person is a qualified individual with a disability, a court first looks to whether the individual meets the prerequisites of the position, "such as possessing the appropriate educational background, employment experience, skills, licenses, etc." McNelis v. Pa. Power & Light Co., 867 F.3d 411, 415 (3d Cir. 2017) (citation omitted).

A court must then determine whether the individual is able to "perform the essential functions of the position held or desired, with or without reasonable accommodation." Id. In

---

[8] The School District concedes that Plaintiff is a disabled person within the meaning of the ADA. (See Doc. No. 44-1 at 3.)

addition, a qualified person with a disability can make a prima facie case of discrimination if she can demonstrate that she is able to "perform the essential functions of the job with reasonable accommodation and that the employer refused to make such an accommodation." Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 768 (3d Cir. 2004).

To prove a prima facie case of discrimination under the ADA, a plaintiff has the burden to show that (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination.[9] Taylor., 184 F.3d at 306 (citing Gault v. Lucent Techs., 134 F. 3d 576, 580 (3d Cir. 1998) (citation omitted)).

Here, the parties dispute whether Plaintiff was able to perform the essential functions of her job at the time she voluntarily retired. The School District argues that Plaintiff is not a qualified individual under the ADA because she could not perform the essential functions of her job when she retired and because judicial estoppel precludes her from contradicting her statements made to the United States Social Security Administration.[10] (Doc. No. 44 at 9-13.) In response, Plaintiff contends that had she been granted her request to cease stair climbing, she could perform all the functions of her position. (Doc. No. 50 at 8.)

---

[9] The element regarding an adverse employment decision will be discussed in Section B of this Opinion as it relates to Count I.

[10] On April 11, 2014, Plaintiff appeared at a hearing before Administrative Law Judge Christine McCafferty following the denial of Plaintiff's application for disability benefits by the Social Security Administration. (Doc. No. 44-18.) Judge McCafferty found Plaintiff disabled as of July 5, 2011 based upon a review of records showing that Plaintiff suffered "from a combination of impairments, including a back disorder and some joint pain, various joint pains, that - - and that this limitation limits [Plaintiff] to sedentary work." (Id. at 9:12-19.)

At the outset, the parties do not dispute that Plaintiff was qualified for her position as an Educational Inclusion Specialist. She had been employed by the School District since 1987, after graduating with Honors from Howard University in 1979 and receiving a Master's Degree in Special Education with Honors from Temple University in 1982. (Doc. No. 34 at ¶¶ 13, 15-16.) By the time she retired from the School District, she was a certified teacher who also possessed additional academic training and was at the highest pay grade level for salary credit, in addition to being fully tenured under state law. (Id. ¶ 17.)

Thus, to determine whether Plaintiff is a qualified person under the ADA, the relevant question is: was she was able to perform the essential functions of an Educational Inclusion Specialist, with or without reasonable accommodation? During a deposition on November 9, 2017, Plaintiff testified that her job duties as an Educational Inclusion Specialist "were to assist with the learning and education with [students with and without disabilities] and the teachers." (Pl.'s Dep., Nov. 9, 2017, 8:7-16.) Together with a regular education teacher, she also taught students with special needs so that they could be integrated into a classroom with certain accommodations being made for them. (Id. at 8:16-20.) Plaintiff also testified in her deposition that she would have to occasionally physically lift or move students and learning materials, as mentioned previously. When asked about her physical interaction with students, she indicated that it was sometimes necessary to do so in order to "keep the student on task so that they could learn." (Id. at 16:1-12.) By requesting an accommodation of either working on the first floor of Wagner Middle School or being relocated to a classroom at another school with an elevator, Plaintiff explained that the arrangement would require students either to stay with her in that classroom or to come to her at designated times, as opposed to her traveling to different classrooms, as she had done before. (Id. at 18:10-18.)

9

In Plaintiff's view, the essential functions of her capacity as an Educational Inclusion Specialist were to assist students, with or without disabilities, to thrive in a classroom setting and that her accommodation request was strictly limited to stair climbing and had nothing to do with her physical interaction with students. In contrast, the School District identifies frequent physical tasks Plaintiff would need to perform to carry out the essential functions of her role. Additionally, it emphasizes the fact that Plaintiff took a medical leave while waiting to hear about her accommodation request because "she became physically unable to perform [her] duties, with or without accommodation." (Doc. No. 44 at 10.) Conversely, Dr. Jones suggested that Plaintiff was "work able" during her examination on September 4, 2013. (Doc. No. 50-8 at 1.) Therefore, a genuine material dispute of fact exists as to whether Plaintiff could perform the essential functions of her role with or without her requested accommodation to stop climbing stairs.

With respect to the School District's argument that Plaintiff's receipt of Social Security Disability benefits and the Administrative Law Judge's finding her to be disabled should estop her from asserting that she is a qualified individual under the ADA, estoppel does not apply. See Turner v. Hershey Chocolate U.S., 440 F.3d 604, 608 (3d Cir. 2006) (holding that statements made in support of plaintiff's application for disability benefits did not estop plaintiff from asserting that she was qualified under the ADA because the "statements did not state categorically that [plaintiff] could not work at all or take into account [plaintiff's] entitlement to reasonable accommodation."); see also Motley v. N.J. State Police, 196 F.3d 160, 166 (3d Cir. 1999) ("Although courts should not assume that an individual's ADA claim is barred merely because prior representations or determinations of disability exist in the record, the attainment of disability benefits is certainly some evidence of an assertion that would be inconsistent with the

argument that the party is a qualified individual under the ADA." (citation omitted)). Thus, the dispute as to whether she is a qualified individual exists, and for this reason summary judgment will be denied on Count I to allow a trier of fact to determine whether Plaintiff is a qualified individual under the ADA.

**B. A Genuine Issue of Material Fact Exists as to Whether Plaintiff Suffered an Adverse Employment Decision Because a Trier of Fact Must Determine Whether the School District Exercised Good Faith in the Interactive Process Required by the ADA**

Although there is evidence showing the School District's efforts to accommodate her request within a reasonable amount of time, there is still a genuine issue of material fact as to whether Plaintiff suffered an adverse employment action. A trier of fact must determine whether the School District's lack of communication with Plaintiff constitutes a failure to engage in a good-faith interactive process with Plaintiff as required by the ADA.

As mentioned above, to make a prima facie case for discrimination under the ADA, as alleged in Count I, a plaintiff must show that she suffered an adverse employment decision. The failure to make a reasonable accommodation in good faith is an adverse employment action. See Colwell v. Rite Aid Corp., 602 F.3d 495, 504 (3d Cir. 2010) (quoting Williams v. Phila. House. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004) ("Adverse employment decisions in this context include refusing to make reasonable accommodations for a plaintiff's disabilities."). Furthermore, a "reasonable accommodation" includes an "employer's reasonable efforts to assist the employee and to communicate with the employee in good faith." Id.

In creating reasonable accommodations, employers are required to "initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

Likewise, the [Equal Employment Opportunity Commission (EEOC)] provides guidelines on the interactive process, stating that the "employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." Taylor, 184 F.3d at 311 (citing 29 C.F.R. Pt. 1630, App. § 1630.9 at 359).

To prove that an employer failed to engage in good faith during the interactive process, an employee must show: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. Colwell, 602 F.3d at 504 (citing Williams, 380 F.3d at 772). An employer, however, can prove it acted in good faith by taking certain steps, such as "meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome." Taylor, 184 F. 3d at 317. Moreover, both an employee and an employer have a duty to act in good faith and must both communicate with each other, "by way of initiation or response." Id. at 312.

Here, based upon the School District's own acknowledgement of Plaintiff's disability and Plaintiff's August 30, 2013 request for an accommodation to Rosen, it is evident that the first two prongs of the good faith test are satisfied.

The third prong examines whether the School District made a good faith effort to assist Plaintiff in seeking accommodations. On this issue, a genuine dispute of material fact exists

because, although efforts were underway to accommodate Plaintiff, no communication between the parties took place to advise Plaintiff on the status of her request, including the results of her examination with Dr. Jones. (Doc. No. 50 at 7.) Despite Dr. Jones's representation that the School District would render a decision on Plaintiff's accommodation request within five days after the September 4, 2018 examination, no action was taken for over two weeks. At this point, on September 23, 2013, with her back pain worsening, Plaintiff decided to take medical leave. Although Plaintiff asserts otherwise, the School District never denied her request. In fact, it appears that Rosen and Johnstone were discussing plans to fulfill Plaintiff's accommodation request. On September 25, 2013, just over two weeks from Plaintiff's request, Rosen e-mailed Johnstone:

> Maya,
>
> Ms. Owens needs to be on a lower floor. Can that be done? I can get you assistance for the move. Is she required to escort students in the building?

(Doc. No. 44-7 at 3.)

> The same day, Johnstone replied:
>
> Okay and no she does not escort students. The students move on their own at the sound of the bell. Once she is in the room she can remain there until dismissal. I will ask my building engineer to help with the move. Will she have to remain there until June, if so that is not a problem I am just asking for clarification.

(Id. at 2.)

> On September 26, 2013, Rosen wrote back:
>
> Maya,
>
> Thank you. You have completely understood what needs to be done. She will have to stay in this room thru [sic] this school year and future years if she remains at Wagner.
>
> Andy

13

(Id. at 2.)

Also on September 26, 2013, Johnstone responded:

Good morning,
Thanks for your help. I will start today preparing her new room for her return on Monday.

(Id. at 2.)

Although Rosen and Johnstone were planning to carry out Plaintiff's request for an accommodation, the School District failed to engage in any form of communication with Plaintiff with respect to her accommodation request, aside from the notice of her examination with Dr. Jones. (Doc. No. 50-7 at 3.) Because she was unaware of the progress being made on her accommodation—and also was unaware that her request would be granted—she submitted a notice of retirement effective October 7, 2013. (Doc. No. 44-8 at 2.) Additionally, Plaintiff alleges that Johnstone did not want Plaintiff to return, which explains why she failed to communicate with her regarding the accommodation.[11] Accordingly, a jury must determine whether the School District met its burden of communicating with Plaintiff in good faith on the status of her accommodation request. A jury must also consider whether the School District engaged in conduct that resulted in a breakdown of the interactive process.

---

[11] Plaintiff makes this allegation based on the following e-mail dated June 25, 2013 from Johnston to Carol Kenney, Director of Employee Health Services at the School District:

Hi Ms. Kenney,
    I am re-organizing for next year. Do you know if Cheryl Lee-Owens will be returning next year. I am asking because the last year and a half I have had substitutes. I am trying to create a schedule that will enable my students to have a consistent teacher next year. Please give me an update on her status.
    Also, after reviewing her attendance on Advantage I have grave concerns. Can an employee take a long term illness every year? Again, just asking because I need to be a step ahead:-). Thank you.

(Doc. No. 50-10 at 7.)

The fourth and final prong examines whether Plaintiff could have been reasonably accommodated but for the employer's lack of good faith. Given that Rosen and Johnstone were working to relocate Plaintiff to the first floor, it is clear that she could have been reasonably accommodated. However, the inquiry of whether the School District engaged in good faith remains outstanding and must be settled by a trier of fact.

Accordingly, because a genuine disputed issue of fact exists as to whether the School District acted in good faith during the interactive process required under the ADA, summary judgment will be denied on whether Plaintiff suffered an adverse employment action.

### C. Under Count III, Plaintiff Fails to Show a Prima Facie Case to Support Her Claim for Retaliation Under the ADA

Plaintiff fails to present a prima facie case to support her allegation that the School District engaged in retaliation under the ADA. Thus, summary judgment in favor of the School District will be granted on this claim.

In her FAC, Plaintiff alleges that the School District "intentionally delayed the payout to which [she] was entitled by falsely informing Lincoln Investment that [she] was terminated." (Doc. No. 34 ¶ 92.) She argues that the School District falsely notified Lincoln that she was terminated in retaliation for her "complaining about [the School District's] failure to provide the reasonable accommodation. (Id. ¶ 71.) Thus, this delayed her payout. (Id.)

To prove a prima facie case of retaliation under the ADA, a plaintiff must establish the following elements. First, she must show a protected employee activity. Second, she must demonstrate adverse action by the employer either during or after the employee's protected activity. Third, she must present a causal connection between the employee's protected activity and the employer's adverse action. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997) (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997)).

In Krouse v. American Sterilizer Co., plaintiff was an employee who returned to work after suffering a work-related injury, but performed below the expected performance standard for his job, even with accommodations. Id. at 499. As a result of his sub-par performance and his frequent absences, he was placed on workers' compensation leave by his employer. Id. Plaintiff alleged that this change was in retaliation for filing the ADA charge with the EEOC, failing to offer him a disability pension, and declining to create an alternative position for him. (Id.)

The Third Circuit concluded in Krouse, however, that plaintiff failed to set forth a prima facie case for retaliation. Finding that he failed to provide evidence to support his retaliation claim other than the fact that he was placed on worker's compensation, he was unable to establish a causal connection between his EEOC charge, the protected activity, and the decision to put him on worker's compensation leave. Id. at 503. Over a year and a half passed from the time plaintiff filed his EEOC charge to the time he was placed on workers' compensation leave. Id. Though the passage of time alone is not sufficient to prove that there was no retaliation, this fact may undermine the existence of a causal link between the protected activity and the employer's allegedly adverse action. Id. Overall, the court found that because plaintiff failed to offer additional facts to suggest that his employer placing him on leave was connected to his filing of an EEOC charge nineteen months prior, the "passage of time in this case is conclusive and that [plaintiff] failed to establish a causal link as a matter of law." Id. at 504.

In the instant case, on October 14, 2013, shortly after her retirement went into effect, Plaintiff sent "Rosen a request for status of a personal leave payout" owed to her. (Doc. No. 34 ¶ 68.) On or about June 9, 2014, after receiving no response from Rosen or the School District, she contacted Lincoln Investment, the company handling the School District employees' financial benefits. (Id. ¶ 69.) There, she discovered her "terminated" status with Lincoln

16

Investment. (Id. ¶ 70.) However, upon speaking with the Lincoln representative, the misclassification was identified and the representative informed Plaintiff that her status would be fixed so that she could receive the payout. (Pl.'s Dep., Nov. 9, 2017, 33:5-7.) Eventually, she received her separation pay. (Id. at 33:10-11.)

During her deposition, Plaintiff stated that she believed Rosen was responsible for classifying her as terminated. (Id. at 34:2-5.) She claims that because the Lincoln Investment representative had directed her to call Rosen's office "because he was the director of . . . employee personnel" and that she had "no reason to believe he is not [the person who classified Plaintiff as terminated.]" (Id. at 34:11-24.) Plaintiff also alleges that Rosen was responsible for the misclassification because after she contacted his office to inform him of the error, it was subsequently fixed. (Id. at 35:7-11.)

Aside from these conclusory allegations, Plaintiff does not present any other facts to establish that Rosen or the School District purposefully changed her status with Lincoln Investment in retaliation for her requested accommodation. There is no evidence in the record which discloses when the misclassification was made nor is there any evidence that reveals who changed Plaintiff's status to "terminated." Furthermore, Plaintiff discovered this alleged retaliatory act approximately over nine months after she made her request for an accommodation. Though the mere passage of time is not dispositive to deny the existence of retaliation, because Plaintiff does not advance any other evidence on this point, no link between her accommodation request and the School District's purported actions to change her status with Lincoln Investment exists. Other than her own belief, Plaintiff does not advance anything beyond speculation that Rosen or the School District was responsible for the error. Thus, she fails to present a prima

facie case for retaliation, and summary judgment will be granted in favor of the School District on this claim.

### D. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 45) will be granted only on the claim of retaliation. An appropriate Order follows.